IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**TALMADGE VERNON LANGSTON**　　　　　　　　　　　　　　　　**PLAINTIFF**

**VS.**　　　　　　　　　　　　　　　　**CIVIL ACTION NO. 2:12-CV-163-KS-MTP**

**3M COMPANY,** *et al***.**　　　　　　　　　　　　　　　　　　　　　　**DEFENDANTS**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
<u>AMERICAN OPTICAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW the Plaintiff, by and through the undersigned counsel, and files this *Memorandum in Opposition to American Optical Corporation's Motion for Summary Judgment* and would show unto the Court the following in support thereof:

**I.　　INTRODUCTION**

American Optical states numerous irrelevant and unsubstantiated facts that have nothing to do with the case pending before Your Honor. Whatever happened in past silica litigation has no bearing on the issues in this case. The only facts that are relevant to the issues of summary judgment are the testimony and evidence presented to date in this case. The Plaintiff moves to strike from consideration by this Court the following sections: Part A Subsections 1, 2, and 3. These alleged facts have nothing to do with Mr. Langston's claims.

Further, the Plaintiff moves to strike Figure 1 on Page 5 of American Optical's memorandum because it is not a picture of Plaintiff's working conditions.

**II.　　SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the nonmoving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). The party seeking summary judgment carries the burden of

demonstrating that there is no evidence to support the nonmovant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). In ruling on a Motion for Summary Judgment, the court is not to make credibility determinations, weigh evidence, or draw legitimate inferences from the facts for the movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Rather, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

### III.    ARGUMENT AND AUTHORITIES

#### A.    PLAINTIFF'S CLAIMS ARE NOT TIME BARRED

This was previously addressed in a separate response and memorandum of law filed as Documents [230] and [231]. Those arguments are adopted and incorporated as if fully set forth herein.

#### B.    THE PLAINTIFF CAN PROVE CAUSATION

"Determining causation is a matter for the jury to consider. The Court is not permitted to simply disregard one alleged cause among several when there is evidence sufficient to create a jury question." *Riley v. Ford Motor Co.,* 2011 WL 2893064 (S.D. Miss. 2011).

There are two primary experts regarding causation in this case. Dr. Steven Haber is a medical expert. Dr. Haber's opinions address whether or not the Plaintiff has a disease caused by exposure to respirable silica. Dr. Haber has diagnosed Mr. Langston with chronic simple silicosis which can only be caused by exposure to respirable silica. *See* Exhibit "A" Report of Dr. Steven Haber. Therefore, Dr. Haber offers medical causation testimony.

Dr. Vernon Rose is an industrial hygienist. Dr. Rose will offer testimony regarding causation as to specific products. *See* Exhibit "B" *Rose Deposition and Expert Reports* at P. 166

Lines 3-6.  Dr. Rose does not offer specific causation opinions, whether the Plaintiff has silicosis, because he is not a medical expert.  Dr. Rose will testify about the dose response relationship of silica along with whether or not Mr. Langston was exposed to respirable silica while wearing Defendants' products.

Darell Bevis is also an industrial hygienist with substantial knowledge and experience with respirators.  Mr. Bevis will also testify that the Plaintiff would have been exposed to respirable silica while wearing the Defendants' products.  Each of these experts' testimony goes together.  American Optical attempts to create some issue through their respective testimony, but none exists.

The Defendant argues that the Plaintiff must prove that without the negligence of American Optical the injury to the Plaintiff would not have occurred.  It is not that simple in this case.  Silicosis is the disease claimed in this case.  Silicosis is a dose response disease.  "All exposures to airborne respirable silica are additive and contribute to his total – total dose . . . ." contributes to the total burden."  Exhibit "B"  at P. 99 Lines 23-25.   Dr. Rose further stated that "that even the lower levels would be an overexposure because they would have added above and beyond background levels, and it si a chronic disease that – that – it's – it's the sum total of the exposures." *Id.* at P. 101 Lines 8-12.  Therefore, each exposure to respirable silica contributes to the overall dose which in turns causes the disease.

American Optical misrepresents Dr. Rose's testimony regarding whether or not the Plaintiff wore the AO 1050.  The Defendant cites to Pages 82-83 and 160-161.  Dr. Rose did not testify whether or not the Plaintiff wore the R1050.  Dr. Rose relies upon the Mr. Langston's testimony that he wore the R1050.  The Defendant is correct in that Dr. Rose testified that he had no evidence whether the Plaintiff wore it properly each time.

3

In contrast to Defendant's argument, Dr. Rose has and will offer opinions as to the amount of respirable silica the Plaintiff was exposed to. Dr. Rose testified that the Plaintiff "would have had some significant exposure wearing that non-air-supplied hood and holding the nozzle and sandblasting . . . ." Exhibit "B" at P. 67 Lines 10-12. Dr. Rose further testified that he was positive that Plaintiff was overexposed to respirable silica while doing the outside blasting. *Id.* at P. 69 Lines 16-22. As to the blasting inside of the monuments, Dr. Rose testified that he believed the Plaintiff was overexposed to respirable silica on occasions. *Id.* at P. 71 Lines 17-24. Dr. Rose stated again that "I believe that that would leave – leave him overexposed to respirable silica", but that he could not put an exact number on it. *Id.* at P. 74 Lines 9-11. Dr. Rose could not state the specific concentration of silica to which Plaintiff would have been exposed because that would have required air monitoring at the time of Plaintiff's exposure which is impossible to obtain over 30 years later.

Dr. Rose testified that if Plaintiff wore the Dustfoe 66, AO 1050, and the Pangborn hood doing the job duties he described he would have been exposed to respirable silica to reasonable degree of certainty. *Id.* at PP. 168-169. Dr. Rose testified that each of these exposures would have contributed to his overall dose of respirable silica. *Id.* at P. 169 Lines 7-11. Dr. Rose finally stated that each of those exposures would have been a contributing factor to Mr. Langston's silica related disease process if he had been diagnosed with one. *Id.* at P. 169 Lines 13-20.

Again, the Defendant misrepresents Mr. Bevis' testimony. Mr. Bevis was asked specifically about Plaintiff's exposure at the end of his deposition. Mr. Bevis testified that silicosis is a dose response disease where each exposure to respirable silica contributes to the overall dose which would contribute to the disease of silicosis if Mr. Langston had it. *See*

Exhibit "C" *Bevis Deposition and Expert Report* at P. 201 Line 23 to P. 202 Line 10. Mr. Bevis further testified that based on all of the information he had in the case Mr. Langston would have been exposed to respirable silica while wearing the Dustfoe 66 and AO 1050. *Id.* at PP. 202-203.

It is clear from the above testimony that Plaintiff has created a genuine issue of material fact regarding causation in this case. As such, the Plaintiff would respectfully request this Court fully and finally deny Defendants' Motion for Summary Judgment as to causation.

C. **PLAINTIFF'S MPLA CLAIMS SHOULD NOT BE DISMISSED.**

    1. **Manufacturing Defect.**

Plaintiff is not pursuing a manufacturing defect claim against American Optical.

    2. **Plaintiff can meet his burden for Failure-to-Warn Claim.**

American Optical argues that Plaintiff's failure to warn claims fail because Plaintiff's employers knew of the alleged danger.

American Optical relies on *Galvan v. Mississippi Power Co.,* 2012 WL 1898889 (S.D. Miss. 2012) a decision rendered by Your Honor. That decision is distinguishable from this case. First, this is a products liability action that is governed by Miss. Code Ann. § 11-1-63. It is a claim between an individual and a manufacturer. The *Galvan* case involved claims between an employee and employers which is governed by OSHA. The claims against American Optical are not governed by OSHA as they do not involve an employee/employer relationship.

Second, in *Galvan,* the Plaintiffs were employees of LandCoast Insulation, Inc. *Id.* at *1. LandCoast was a subcontractor of PIC Group, Inc. which had entered into an agreement with Mississippi Power Company to perform maintenance work on boilers. *Id.* This Court primarily relied on the contract between the parties and Miss. Code Ann. § 11-1-66 to determine that the case should be dismissed. Again, this case is governed by Miss. Code Ann. § 11-1-63 which

5

imposes a duty upon manufacturers to provide adequate warnings and/or use limitations.

Third, American Optical cites to OSHA in an attempt to relieve itself of liability. "OSHA's regulations are not admissible to prove negligence." *Rogers v. Barlow Eddy Jenkins, P.A.,* 22 So.3d 1219 (Miss. Ct. App. 2009); citing *Crane Co. v. Kitzinger,* 860 So.2d 1196, 1199-1200 (¶12). The Mississippi Legislature has declined to give compulsory force to OSHA regulations under state law. *See* Miss. Code Ann. § 71-1-1(f). The clearly stated rule in Mississippi is "that governmental codes and regulations are not admissible unless given compulsory force by the state legislature, evidence of OSHA regulations is not admissible to show negligence." *Sumrall v. Miss. Power Co.,* 693 So.2d 359, 367 (Miss. 1997) (OSHA safety standards can not be used either as conclusive proof or evidence of negligence) *See also Crane,* 860 So.2d at 1200 (¶12) ("the regulations [are] not admissible to show negligence on the part of [Decedent's Employers].")

The Mississippi Supreme Court has also addressed using OSHA regulations in regards to causation. "Likewise, OSHA's regulations, even if admissible, are insufficient to prove causation." *Rogers,* 22 So.3d at 1224 (¶19). The inverse of this holding is equally true. That is, American Optical can not use the OSHA regulations to argue that proximate causation was cut off by any alleged knowledge of OSHA by Plaintiff's employer.

American Optical is essentially arguing the sophisticated user or learned intermediary defense to claim that it has no duty to warn in this case. **The sophisticated user defense is an issue for the jury to decide.** Whether a manufacturer has fulfilled its duty under the sophisticated user doctrine is a question for the trier of fact. *See Reibold v. Simon Aerials, Inc.* 859 F.Supp. 193, 201 (E.D. Va. 1994) (holding that it was for the jury to determine, in light of the factors mentioned in comment n to the Restatement, whether the manufacturer acted

6

unreasonably in relying on the employer to warn its employees); *Dole Food Co., Inc. v. North Carolina Foam Ind., Inc.,* 935 P.2d 876,881 (Ariz. Ct. App. 1997) (holding that whether a manufacturer has discharged his duty, considering these factors, is a question for the trier of fact); *Eagle-Picher Ind., Inc. v. Balbos,* 604 A.2d 445, 465 (Md. Ct. App. 1992) (stating that inquiries into the reasonableness of conduct are typically the province of the jury rather than the court); *Natural Gas Odorizing, Inc. v. Downs,* 685 N.E.2d 155, 164 (Ind. Ct. App. 1997)(stating that the manufacturer's reliance on the intermediary's alleged sophistication may be more or less reasonable, given a number of factors, and ultimately those factors must be balanced by the trier of fact).

In addition, "the seller's warning must be reasonably calculated to reach such persons and **the presence of an intermediate party will not by itself relieve the seller of this duty**." *Borel v. Fibreboard Paper Products Corp.* 493 F.2d 1076, 1091 (C.A.Tex. 1973); citing *Sterling Drug Co. v. Cornish,* 8 Cir. 1966, 370 F.2d 82; *Yarrow v. Sterling Drug,* 8 Cir. 1969, 408 F.2d 978; Noel, Products Defective Because of Inadequate Directions or Warnings, 23 S.W.L.J. 256 (1916).

"The learned intermediary defense does not relieve the manufacturer of its duty to warn, however, unless the manufacturer's reliance on the intermediary is reasonable." *Swan v. I.P., Inc*., 613 So.2d 846, 855-56 (Miss. 1993). Indeed, the most modern pronouncement from the Supreme Court on the issue *requires* a determination by the fact finder that the manufacturer reasonably relied on the employer. *See Miss. Valley Silica Co., Inc. v. Eastman*, 92 So.3d 666, 672 (Miss. 2012) (trial reversed when instruction "failed to include the common-law, reasonable-reliance requirement announced in *Swan*").

"In other cases, courts have held that the presence of an intermediary did not relieve the manufacturer of its duty to warn." *Swan,* 613 So.2d at 854. In *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076 (5th Cir.1973), an insulation worker brought an action against the manufacturers of insulation which contained asbestos. The court rejected the manufacturers' argument that it was the responsibility of the insulation contractors to warn the insulation workers of the risk of harm. *Swan,* 613 So.2d at 854; *Id.* at 1091. "The court noted that under the Restatement, a seller may be liable to the ultimate user or consumer for failure to give adequate warnings. The seller's warning must be reasonably calculated to reach such persons and the presence of an intermediary party will not by itself relieve the seller of this duty." *Swan,* 613 So.2d at 854-55; *Id.; see also Hammond v. North American Asbestos Corp.,* 97 Ill.2d 195, 73 Ill.Dec. 350, 357, 454 N.E.2d 210, 217 (1983).

Put plainly, *Swan* allows a manufacturer to discharge its liability if it can prove that it reasonably relied upon an intermediary sot that the warnings would be reasonably calculated to reach the Plaintiff. The Defendants have the burden of proving this affirmative defense. *See Hertz Commercial Leasing Div. v. Morrison*, 567 So.2d 832, 834 (Miss. 1990) ("If a matter is an affirmative defense, the defendant bears the burden of production and the risk of non-persuasion"); MS Prac. Trial Handbook for Lawyers § 9:19 (3d ed.) ("The burden of proof is on the defendant in a civil case to prove all affirmative defenses").

The focus then is on whether Defendants can prove at trial that it reasonably relied upon Plaintiff's employers to inform the Plaintiff of the dangers of sandblasting. Only if the Defendants "reasonably relied" upon Plaintiff's employers could the learned intermediary doctrine potentially shield them from liability. There is no evidence in the record that the Defendants had any knowledge regarding anything about Plaintiff's two employers.

In *Swan*, "representatives of both [the manufacturers] visited the job site while the work was in progress and witnessed [a contractor's] spraying procedures." 613 So.2d at 851. "None of the representatives expressed any concern about these procedures to [the contractor]." *Id*. This was not enough for the Supreme Court to determine that the intermediaries relieved the manufacturer of the duty to warn. *Id*. at 856. "From this record we cannot know whether it was reasonable for [the manufacturers] to assume that [the contractor] was knowledgeable about the hazards because the facts are in dispute as to whether [the manufacturers] ever sent [the contractor] any information concerning the chemical properties of the products and the hazards associated with them." *Id*. Indeed, just as in this case, there were facts that the manufacturers in *Swan* did not send any warnings to the intermediaries at all. *Id*.

Accordingly, the Supreme Court ruled that "because the evidence was insufficient to conclude that [the contractor] was a sophisticated user, the learned intermediary doctrine still required [the manufacturers] to furnish information and warnings to [the intermediary]." *Id*.

There is no testimony or evidence in this case that any of the Defendants went to Plaintiff's employers and consulted with the company about the risks and dangers associated with Defendant's respirators. Like *Swan*, there was no evidence that the Defendants ever visited Plaintiff's employers; whether they informed any of Mr. Langston's supervisors of the dangers of silica or misuse of respirators; or whether they ever even communicated any real information about the hazards of their products to the intermediary.

Mr. Langston testified that he read the instructions that came on the box. *See* Exhibit "D" Langston Deposition at PP. 88-89. Mr. Langston testified that if the instructions had told him not to use the AO 1050 in or around sandblasting he would have used something else. *Id.* at P. 237 Line 19 to P. 238 Line 2. Therefore, Mr. Langston testified he read and relied upon the

information provided with the AO 1050.  The information did not inform him to not use the AO 1050 in or around sandblasting.  If it had, he would have used something else.  The Plaintiff has submitted sufficient evidence to create a genuine issue of material fact as to his failure to warn claim against American Optical.

Based on the foregoing, this Court should deny American Optical's motion for summary judgment on Plaintiff's failure to warn claims.

### 3. Plaintiff's Design Defect Claims Should Not be Dismissed.

The Plaintiff has submitted sufficient evidence to prove a design defect claim against American Optical.  Dr. Rose's reports are attached as exhibits 19 and 20 to his deposition.  *See* Exhibit "B" (On Page 113 of his deposition Dr. Rose swore under oath that Exhibit 20 were his opinions regarding the AO 1050).  Dr. Rose's report indicates that it is difficult if not impossible to perform a face fit check on the valveless AO 1050 respirator.  *Id.* at Ex. 20 to Deposition.  This is one design defect.  Dr. Rose also states that it was impossible to perform a fit test on the AO 1050 respirator until 1982 when 3M began selling a respirator fit test kit for disposable respirators. *Id.*  This is a second design defect.   Dr. Rose stated there were safer alternative designs available on the market in elastomeric cartridge respirators.  *Id.*  Dr. Rose testified that AO's deviation from the elastomeric respirator design was a deviation from the state of the art resulting in an unreasonably dangerous design.

Mr. Bevis submitted a report regarding the AO 1050 which was attached as Exhibit 3 to his deposition.  *See* Exhibit "C".  Mr. Bevis testified that it is impossible to obtain a seal of the respirator to the face. *Id.*  Mr. Bevis testified that the metal strip across the nose of the bridge relaxed and reshapes itself very quickly preventing a quality seal. *Id.*  The lack of exhalation valve causes an increase in pressure drop or breathing resistance causing additional facepiece to

face seal leakage. Mr. Bevis agrees with Dr. Rose that a fit test could not be performed on the AO 1050 during the time period Mr. Langston was using it. *Id.* Mr. Bevis testified that it was impossible to perform a user seal check on the AO 1050. *Id.* Mr. Bevis agreed that the alternative design to AO 1050 was an elastomeric respirator. *Id.*

In contrast to American Optical's assertions, Mr. Bevis testified that his opinions were based on his actual testing of disposable respirators in the late 1960's a Los Alamos Laboratory[1]. Further, Mr. Bevis' and Dr. Rose's opinions are supported by the 1980 ANSI standards. *See* Exhibit "E" 1980 ANSI Standards [stating negative and positive pressure tests (user seal checks) are near impossible to carry out on valveless respirators which the AO 1050 respirator is]. In addition, Mr. Bevis was a member of the subcommittee that drafted and prepared the 1980 ANSI standards. *Id.*

Finally, Dr. Rose testified that if Plaintiff wore the AO 1050 doing the job duties he described he would have been exposed to respirable silica to reasonable degree of certainty. *See* Exhibit "B" at PP. 168-169. Dr. Rose testified that each of these exposures would have contributed to his overall dose of respirable silica. *Id.* at P. 169 Lines 7-11. Dr. Rose finally stated that each of those exposures would have been a contributing factor to Mr. Langston's silica related disease process if he had been diagnosed with one. *Id.* at P. 169 Lines 13-20. Mr. Bevis also testified that based on all of the information he had in the case Mr. Langston would have been exposed to respirable silica while wearing the Dustfoe 66 and AO 1050. *See* Exhibit 'C" at PP. 202-203.

---

[1] The testing did not involve the AO 1050 as it was not introduced to the market until October 1976, but Mr. Bevis' opinions regarding disposable respirators and their design defects apply across the board to this class of respirators. In fact, the AO 1050 was designed to compete against the 3M 8710, one of the first NIOSH approved disposable respirators.

The Plaintiff respectfully submits that he has submitted sufficient evidence to create genuine issues of material fact regarding his design defect claims. Therefore, the Plaintiff would respectfully request this Court deny American Optical's Motion for Summary Judgment regarding Plaintiff's design defect claims.

**4.     Express Warranty Claims.**

Plaintiff is not pursuing these claims.

**D.     NEGLIGENCE CLAIMS REMAIN**

The ability to bring negligence claims alongside MPLA claims was addressed in Plaintiff's response to MSA's Motion for Summary Judgment on the same issue. Those arguments and exhibits are adopted and incorporated herein.

In addition, gross negligence and punitive damages are not subsumed by the MPLA. These are brought pursuant to Miss. Code Ann. 11-1-65.

WHEREFORE PREMISES CONSIDERED, the Plaintiff respectfully requests this Court to deny *American Optical Corporation's  Motion for Summary Judgment* and to grant any other relief it deems appropriate.

DATED, this the 29th day of November, 2013.

                                        RESPECTFULLY SUBMITTED

                                        By:   /s John T. Givens_____
                                               John T. Givens, *Attorney for Plaintiff*

Of Counsel:

Timothy W. Porter, MSB No. 9687
Patrick C. Malouf, MSB No. 9702
John T. Givens, MSB No. 101561
PORTER & MALOUF, P.A.
Post Office Box 12768
Jackson, Mississippi  39236-2768
Telephone:   (601) 957-1173
Facsimile:   (601) 957-7366
tim@portermalouf.com
patrick@portermalouf.com
johnny@portermalouf.com

R. Allen Smith, Jr., MSB No. 99984
THE SMITH LAW FIRM, P.L.L.C.
681 Towne Center Boulevard, Suite B
Ridgeland, Mississippi  39157
Telephone:   (601) 952-1422
Facsimile:   (601) 952-1426
allen@smith-law.org

## CERTIFICATE OF SERVICE

I, JOHN T. GIVENS, the undersigned counsel for Plaintiff, do hereby certify that I have this date electronically filed the foregoing instrument with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants.

NONE

DATED, the 29th day of November, 2013.

s/ John T. Givens
John T. Givens