IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**TALMADGE VERNON LANGSTON**                                      **PLAINTIFF**

**V.**                                 **CIVIL ACTION NO. 2:12cv163-KS-MTP**

**PANGBORN CORPORATION;**
**AMERICAN OPTICAL CORPORATION;**
**MINE SAFETY APPLIANCES COMPANY; and**
**MISSISSIPPI VALLEY SILICA COMPANY, INC.**              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendant Mine Safety Appliances Company's ("Mine Safety") Motion for Summary Judgment Based upon the Statute of Limitations [183]; the Defendant Pangborn Corporation's ("Pangborn") Motion for Summary Judgment [185]; and, the Defendant American Optical Corporation's ("American Optical") Motion for Summary Judgment [200]. Having considered the submissions of the parties, the record, and the applicable law, the Court finds that summary judgment should be granted in favor of the Defendants due to the Plaintiff's failure to file suit within the time prescribed by the applicable statute of limitations.

### I. BACKGROUND

On May 14, 2012, Plaintiff Talmadge Vernon Langston filed suit against twenty-one (21) Defendants in the Circuit Court of Forrest County, Mississippi, alleging injury as a result of being exposed to crystalline silica while working as a sandblaster from 1971 to 1983. (*See* Compl. [183-1].) "The Plaintiff's alleged injury is lung disease and silica related conditions . . . ." (Compl. [183-1] at p. 2.) The Complaint asserts that each Defendant either manufactured, marketed, distributed, and sold defective personal

respiratory equipment; defective sandblasting equipment; or silica sand.  Further, the Complaint sets forth the following causes of action in support of recovery against all of the Defendants:  strict liability and product defects; negligence; breach of warranties (express and implied); civil conspiracy; acting in concert; and gross negligence.

On August 20, 2012, an Agreed Judgment of Dismissal Without Prejudice [1-2] was entered in the state court with respect to Langston's claims against Dependable Abrasives, Inc. ("Dependable").  On September 18, 2012, the remaining Defendants removed the proceeding to this Court on the basis of diversity of citizenship jurisdiction under Title 28 U.S.C. § 1332.  (*See* Notice of Removal [1].)  The Notice of Removal provides that the dismissal of Dependable, a Mississippi corporation, allowed for removal and gave rise to diversity jurisdiction since the Plaintiff is a citizen of Mississippi and all of the other Defendants are citizens of states other than Mississippi.  The Notice of Removal further posits that § 1332(a)'s amount in controversy requirement is met in light of the punitive damages and actual damages for personal injuries sought by the Plaintiff.

Only Langston's claims against Pangborn, American Optical, Mine Safety, and Mississippi Valley Silica Company, Inc. remain pending as of the date of this opinion and order.  Each of these Defendants, either independently or through joinder, seeks summary judgment on the basis that Langston's claims are time-barred under section 15-1-49 of the Mississippi Code.  American Optical also requests summary judgment on other grounds, which need not be addressed due to the Court's ruling on the statute of limitations issue.

## II.  DISCUSSION

A.      **Standard of Review**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When a party seeks summary judgment pursuant to an affirmative defense, such as a statute of limitation, the movant must establish all of the elements of the defense." *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011) (citation omitted). The nonmovant must then come forward with "specific facts showing the existence of a genuine issue for trial. *Id.* "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation omitted). "'An issue is material if its resolution could affect the outcome of the action.'" *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).

The court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citing *Sec. & Exch. Comm'n v. Recile*, 10 F.3d

1093, 1097 (5th Cir. 1993)).

**B.     Analysis**

The parties agree that section 15-1-49 of the Mississippi Code supplies the applicable statute of limitations for Langston's claims. The statute provides in pertinent part:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.
>
> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code Ann. § 15-1-49.  With respect to subsection (2) of the statute, which applies to the latent injuries alleged in this action, the Mississippi Supreme Court has held "that the plain language of the statute" results in a cause of action accruing "upon discovery of the injury, *not discovery of the injury and its cause*." *Angle v. Koppers, Inc.*, 42 So. 3d 1, 5 (¶ 9) (Miss. 2010).[1] Defendants contend that Langston had knowledge of the lung injuries alleged in this lawsuit well before May 14, 2009, three years prior to the filing of this action. Langston argues that his claims did not accrue until he was

---

[1] The Mississippi Supreme Court's holdings on issues of substantive law are controlling in this diversity action. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).  Mississippi's highest court has noted that a different statutory discovery rule applies in medical malpractice actions. *See Huss v. Gayden*, 991 So. 2d 162, 165-66 (¶ 5) (Miss. 2008).  Under section 15-1-36 of the Mississippi Code, the relevant inquiry "is when the patient *can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner*." *Id.* (citing *Smith v. Sanders*, 485 So. 2d 1051, 1052-53 (Miss. 1986)).

diagnosed with silicosis on November 7, 2012.  The Court concludes that the

Defendants have the better side of the argument.

Defendants assert that the following circumstances show Langston's knowledge

of the injuries at issue in this case prior to **May 14, 2009**:

- Langston's retained medical expert, Dr. Steven Haber, testified at deposition that Langston was diagnosed with chronic obstructive pulmonary disease ("COPD") in **1992**.[2]  Dr. Haber's expert report provides that Langston was diagnosed with emphysema and COPD in **2003**.[3]

- An x-ray report from **July, 2001**, indicates that Langston was admitted to Anderson Regional Medical Center South with diagnoses of chronic lung disease and shortness of breath, and lists an impression of moderate COPD.[4]

- In seeking Social Security disability benefits, Langston stated that his emphysema, which resulted in shortness of breach, started to bother him in **2001** and prevented him from working beginning on **August 1, 2003**.[5]

- The SSA determined that Langston became eligible for disability benefits due to chronic pulmonary insufficiency on **December 2, 2003**.[6]

---

[2] (*See* Haber Dep. [185-2] 48:21-49:1.)  COPD refers to "those diseases with permanent or temporary narrowing of small bronchi, in which forced expiratory flow is slowed, especially when no etiologic or other more specific term can be applied." *Stedman's Medical Dictionary* (27th ed. 2000); *see also Taber's Cyclopedic Medical Dictionary* (2011) (defining COPD as "a group of debilitating, progressive, and potentially fatal lung diseases that have in common increased resistance to air movement, prolongation of the expiratory phase of respiration, and loss of the normal elasticity of the lung").

[3] (*See* Haber Report [183-7] at p. 3.)

[4] (*See* Doc. No. [185-3 at ECF p. 2].)

[5] (*See* Social Security Administration ("SSA") Records [183-2 at ECF p. 4].)

[6] (*See* SSA Records [183-2 at ECF p. 2].)

- Langston testified at deposition that 90 percent of his "disability back in **2002** was due to . . . breathing problems".[7]

- Langston's medical records dated **July 13, 2005, August 25, 2005, November 29, 2005, October 30, 2006, November 16, 2006, December 10, 2007, April 16, 2008**, and **August 18, 2008**, list an impression of severe or significant COPD.[8] The medical record dated **July 13, 2005**, also notes that Langston "has been a heavy smoker for quite a long time and as far back as '92 he thinks he was told he might have emphysema. . . . He has a history of being a sand blaster . . . ." A medical record dated **July 18, 2005**, provides that Langston "has known he has had some COPD for a number of years."[9] The medical record dated **April 16, 2008**, also lists an impression of bronchitis.

- A **July 21, 2005** x-ray report includes an impression of pulmonary fibrotic scarring, i.e., excess fibrous tissue in the lungs.[10] An **August 4, 2005** x-ray report notes the existence of moderately extensive COPD with fibrosis.[11] An **August 8, 2005** x-ray report includes an impression of "coarse increased bronchial markings at the mid and lower lung fields bilaterally compatible with some endobronchial scarring and accompanying bronchitis."[12] An **April 16, 2008** x-ray report lists a diagnosis of shortness of breath and notes the existence of mild fibrotic scarring.[13]

- Langston testified that approximately three or four years after he filed for disability, which would have been in or around **2007**, he researched the disease silicosis and found out that it is caused by the inhalation of silica dust.[14] Langston was "trying to find out -- after I found out I had lung

---

[7] (Langston Dep. [200-2] 242:25-243:3) (emphasis added).

[8] (Medical Records [183-3 at ECF pp. 1, 2, 3, 8, 11-12, 13, 14-15, 31].)

[9] (Medical Records [183-3 at ECF p. 21].)

[10] (*See* Doc. No. [254-5 at ECF p. 2].)

[11] (*See* Doc. No. [254-7 at ECF p. 2].)

[12] (Doc. No. [254-8 at ECF p. 2].)

[13] (*See* Doc. No. [254-10 at ECF p. 2].)

[14] (*See* Langston Dep. [200-2] 39:21-24, 210:11-211:25.)

>  cancer -- I mean lung trouble, I wanted to find out all about lung problems that I could, and silicosis just happened to pop up."[15]

Defendants' legal arguments are principally grounded on two Mississippi Supreme Court opinions: *Angle*, 42 So. 3d 1, and *Lincoln Electric Co. v. McLemore*, 54 So. 3d 833 (Miss. 2010). In *Angle*, the Mississippi Supreme Court considered whether the trial judge erred in granting summary in favor of the Defendants due to the running of section 15-1-49's three-year period of limitations. 42 So. 3d at 2 (¶ 1). The plaintiff, Rebekah Angle, filed suit on March 17, 2006, alleging numerous illnesses and injuries resulting from exposure to toxic chemicals produced by a wood-treatment facility that was within close proximity to Angle's residence. *Id.* at 2 (¶ 2). The Defendants argued that the statute of limitations accrued no later than 2001, when Angle discovered or was diagnosed with her various illnesses. *Id.* at 3 (¶ 4), 4 (¶ 7). Angle claimed that the time for her to file suit did not begin to run until she discovered that her medical problems were caused by exposure to toxic chemicals. *Id.* at 4 (¶ 7). After examining several prior opinions, the court concluded:

> We find that Angle's cause of action accrued at the latest in 2001, the date she was last diagnosed with an injury or disease. No provision of Section 15-1-49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues, initiating the running of the statute of limitations. Therefore, we find that Angle's claims are time-barred under Mississippi Code Section 15-1-49(2), as she filed her complaint in 2006, approximately five years after her discovery of the last injury.

*Id.* at 7 (¶ 18). Thus, the trial court's grant of summary judgment was affirmed. *Id.* at 9 (¶ 23).

In *McLemore*, the Mississippi Supreme Court considered whether the trial judge

---
[15] (Langston Dep. [200-2] 211:3-7.)

erred in denying a motion for summary judgment (and a motion for judgment notwithstanding the verdict) based on the purported expiration of the statute of limitations. 54 So. 3d at 835 (¶ 11). The plaintiff, Stanley McLemore, filed suit on November 14, 2005, against certain manufacturers of welding rods "for exposure to harmful welding fumes that resulted in his eventual diagnosis of manganism, a neurological disease caused by high exposure to manganese." *Id.* at 833-34 (¶¶ 1-2). The Defendants argued that McLemore's time to sue ran from September 3, 2002. On that date, McLemore knew that he had an injury because a physician diagnosed him with Parkinsonism and informed him that this condition may have been related to his work as a welder. *Id.* at 835 (¶ 12). McLemore claimed "that his cause of action did not accrue until October 2005, when he was diagnosed with manganism." *Id.* at 835 (¶ 13). The court primarily relied on its earlier opinion in *Angle* in determining that McLemore's claims accrued when he knew of his diagnosis of Parkinsonism in 2002, as opposed to his later diagnosis of manganism. *See id.* at 836 (¶ 15), 838 (¶¶ 23-24). The following circumstances showed that McLemore either knew or should have known of his injury (as opposed to its cause) no later than September, 2002: (i) McLemore had difficulty using his left hand in December, 2001; (ii) McLemore filed a separate complaint complaining of "serious neurological injury" prior to being diagnosed with manganism in 2005; and (iii) McLemore was advised that he had Parkinsonism and that it might have been related to his occupation on September 3, 2002. *Id.* at 838 (¶¶ 23-24). As a result, McLemore's November, 2005 complaint was untimely and the trial court's ruling was reversed. *See id.* at 839 (¶¶ 30-31).

Langston also chiefly relies on Mississippi Supreme Court opinions in support of

his argument that the statute of limitations did not begin to run until he was diagnosed with silicosis on November 7, 2012.  See Phillips 66 Co. v. Lofton, 94 So. 3d 1051 (Miss. 2012); Empire Abrasive Equip. Corp. v. Morgan, 87 So. 3d 455 (Miss. 2012); Kinsey v. Pangborn Corp., 78 So. 3d 301 (Miss. 2011); Clark Sand Co. v. Kelly, 60 So. 3d 149 (Miss. 2011).  In Lofton, the court refused to overturn the jury's finding that the plaintiff timely brought suit for injuries to his lungs as a result of exposure to asbestos products.  See 94 So. 3d at 1060 (¶ 17).  The plaintiff's May, 2004 complaint was filed within the statute of limitations because he "could not reasonably have known about his injury until he sought treatment in September 2003 for symptoms associated with his asbestosis and was diagnosed with pulmonary fibrosis."  Id. at 1059 (¶ 16).  Morgan, Kinsey, and Kelly were wrongful death actions in which the plaintiffs' decedents were alleged to have suffered from silicosis.  In each case, the Mississippi Supreme Court provided that the statute of limitations for any "survival-type" claims began to run on the date the plaintiffs' decedent was diagnosed with silicosis.  See Morgan, 87 So. 3d at 457 (¶ 2), 462 (¶ 25); Kinsey, 78 So. 3d at 307 (¶ 18); Kelly, 60 So. 3d at 161 (¶ 42).  The Defendants in Morgan, Kinsey, and Kelly did not appear to contest the date of accrual for the subject claims, and the court found the claims time-barred in each case.  See Morgan, 87 So. 3d at 462 (¶ 25), 464 (¶ 32); Kinsey, 78 So. 3d at 307-08 (¶¶ 18-20); Kelly, 60 So. 3d at 162 (¶ 46).

      Without overlooking the obvious, the Court notes that Langston's November 7, 2012 silicosis diagnosis occurred almost six (6) months *after* he filed suit on May 14, 2012.  The diagnosis was made by Dr. Steven Haber, Langston's retained medical expert.  No medical record showing a diagnosis of silicosis from any of Langston's

treating physicians has been presented to the Court.  Clearly then, the subject diagnosis is immaterial to the issue of when the claims alleged in the Complaint accrued for statute of limitations purposes and fails to give rise to a genuine dispute for trial.  Any contrary argument from Langston is "disingenuous and without merit."  *Powe v. Byrd*, 892 So. 2d 223, 228 (¶ 17) (Miss. 2004) (rejecting the plaintiff's argument that the statute of limitations did not start to run until December 1, 2000, when her complaint was filed on August 3, 2000).  Further, the accrual rule cited by the Mississippi Supreme Court in *Morgan*, *Kinsey*, and *Kelly* is inapplicable here since the plaintiffs in those actions filed suit subsequent to each respective silicosis diagnosis.  *See Morgan*, 87 So. 3d at 462 (¶ 25); *Kinsey*, 78 So. 3d at 307 (¶18); *Kelly*, 60 So. 3d at 162 (¶ 46).

      Notwithstanding the inadequacy of Langston's accrual argument, the Court must determine if the Defendants have met their burden of establishing that Langston either knew or should have known of his injuries prior to May 14, 2009.  The Court finds *McLemore* and *Lofton* instructive in resolving this issue.  The record before the Court shows that Langston, similar to McLemore, experienced physical problems related to the injuries alleged in the Complaint more than three years prior to the initiation of his action.  McLemore experienced difficulty using his left hand in December, 2001, while his November, 2005 complaint alleged serious neurological injuries.  *See McLemore*, 54 So. 3d at 835 (¶ 9), 838 (¶ 24).  Langston was diagnosed with chronic lung disease and shortness of breath in July, 2001,[16] believed that his emphysema started to bother him

---

[16] (*See* Doc. No. [185-3 at ECF p. 2].)

in 2001,[17] became eligible for disability benefits due to chronic pulmonary insufficiency on December 2, 2003,[18] was found to have pulmonary fibrotic scarring and significant COPD as early as July, 2005,[19] and was found to have bronchitis in April, 2008;[20] whereas his May 14, 2012 Complaint alleges "lung disease", injury to "Plaintiff's lungs and body", and "premature disability."  (Compl. [183-1] at pp. 2, 13, 14.)  Although it does not appear that any medical provider affirmatively informed Langston of any correlation between his various pulmonary ailments and his work as a sandblaster prior to 2012, "notice of this causal relationship generally is irrelevant to the accrual of the cause of action . . . ."  *McLemore*, 54 So. 3d at 838 (¶ 23).  Also analogous to McLemore, Langston filed suit alleging injury caused by exposure to crystalline silica prior to the silicosis diagnosis that purportedly triggered the running of the statute of limitations.   *See id.* at 835 (¶¶ 9, 13) (providing that McLemore argued that his cause of action did not accrue until he was diagnosed with manganism in 2005, but his separate 2004 complaint alleged injuries caused by exposure to manganese).  Langston even testified at deposition that in or around 2007, he researched the disease silicosis due to his lung problems.   (*See* Langston Dep. [200-2] 39:21-24, 210:11-211:25.)  "These events and actions by . . . [Langston] show that he knew, (or should have known) no later than . . . [2008], that he had an injury."  *McLemore*, 54 So. 3d at 838 (¶ 24).

---

[17] (*See* SSA Records [183-2 at ECF p. 4].)

[18] (*See* SSA Records [183-2 at ECF p. 2].)

[19] (*See* Medical Records [183-3 at ECF p. 13]; Doc. No. [254-5 at ECF p. 2].)

[20] (*See* Medical Records [183-3 at ECF p. 15].)

This action is also similar to *Lofton* in that the "definitive diagnosis of" silicosis did not occur until after suit was filed. 94 So. 3d at 1059 (¶ 16) (providing that Lofton filed suit in 2004, but "[a] definitive diagnosis of asbestosis was not made until 2010"). However, unlike Lofton, Langston should have reasonably "known about his injury" more than three years prior to filing suit since "he sought treatment . . . for symptoms associated with his . . . [silicosis] and was diagnosed with" numerous "pulmonary" diseases or conditions before 2009. *Id.* Dr. Haber testified at deposition that Langston's COPD, bronchitis, and emphysema were related to silica exposure. (*See* Haber Dep. [254-11] 35:6-11, 54:21-55:10.) Dr. Haber's trial testimony in a separate proceeding comports with this deposition testimony:

> Q. Thank you, Doctor. You brought us this slide here which talks about silicosis and COPD. What is significant about what you brought us here on this slide?
>
> A. Well, silica dust is one of the most important occupational toxins. And the dust has been documented to be posing increased risk for development of chronic bronchitis, COPD, and then can cause this compensatory emphysema. . . .

(*See* Doc. No. [183-8] 209:20-210:3.) The reasoning of *Lofton*, if not the holding, applied to the facts of this case supports the dismissal of Langston's claims based on untimeliness.

The Mississippi Supreme Court's holding in *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47 (Miss. 2005), further supports the Defendants' requests for dismissal. There, the court found that the trial judge erred in refusing to grant summary judgment based on the running of the statute of limitations under section 15-1-49. *See Lowery*, 909 So. 2d at 51-52 (¶¶ 16-22). The medical attention sought by the plaintiff,

Melissa Lowery, confirmed that she knew she was injured for purposes of accrual. *Id.* at 51 (¶ 16). Further, "Lowery did not require absolute certainty nor an expert opinion to vest the right to a cause of action under this state's products liability statute." *Id.* at 51-52 (¶ 18) (citations omitted). In this case, the extensive and consistent medical treatment sought by Langston for his breathing problems confirms that he either knew or should have known of his lung injuries prior to 2009. Moreover, the accrual of Langston's cause of action was not dependent upon an expert witness placing the label of silicosis on his injury.

### III.  CONCLUSION

Langston seeks recovery for "lung disease and silica related conditions", injury to his "lungs and body", and "premature disability". (Compl. [183-1] at pp. 2, 13, 14.) The summary judgment record establishes that Langston either knew or should have known of these injuries more than three (3) years prior to the filing of this lawsuit. Thus, there is no genuine issue as to any material fact and Langston's claims are time-barred under section 15-1-49 of the Mississippi Code.

IT IS THEREFORE ORDERED AND ADJUDGED that the summary judgment motions (Doc. Nos. [183], [185], [200]) are granted and Plaintiff's Complaint is dismissed with prejudice. Any other pending motion is denied as moot. A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 31st day of January, 2014.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

-13-